UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,

    Plaintiff,

v.

MICHAEL STACK, ET AL.,

    Defendants.

_____/

Case No. 18-12999

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER DENYING ALLSTATE'S MOTION FOR SUMMARY JUDGMENT [41];
GRANTING MCINTYRE'S MOTION FOR SUMMARY JUDGMENT [42]; AND
GRANTING IN PART AND DENYING IN PART AMCO'S MOTION FOR SUMMARY
JUDGMENT [44]**

This is a diversity contract dispute between two insurance companies and the estates of two victims of an auto accident. Plaintiff, Allstate Insurance Company, Inc. ("Allstate") sues for a declaratory judgment that the Personal Umbrella Policy held by insured party Michael Stack, who was at-fault in the accident, excluded coverage for the accident. Defendant AMCO Insurance Company ("AMCO") argues that the insurance policy held by the company for which Michael Stack worked excluded coverage for the accident. Defendants Thomas McIntyre and Sandy Holewinski, as personal representatives of the estates of the deceased, argue that the policy exclusions of Allstate's Personal Umbrella Policy are inapplicable to this case, and that Allstate is liable for costs arising from the accident.

## Factual Background

On December 12, 2017, Michael Stack was a sales executive for Penguin Toilets, L.L.C. (Dep. of Michael Stack, Dkt. 41-4, pg.18-22). Penguin Toilets sold toilets with an overflow drainage system. The toilets were manufactured in China, shipped to a warehouse in Taylor, Michigan, and then from there shipped wholesale to various buyers. (*Id.*). Michael Stack was the Senior Vice President of Sales and Distribution and his job was to coordinate the shipments coming in from China with the purchase orders coming in from buyers. (*Id.* at 29). Michael Stack was not an employee, however. He filed a K-1 not a W-2 with the IRS. (*Id.* at 30-31). He owned 3 percent of the company and received guaranteed payment in the amount of $42,000 per year as compensation for his services. (*Id.* at 29-30). His brother, Patrick Stack, was his supervisor and the company's managing member. (*Id.* at 31).

Michael Stack would go to the warehouse in Taylor "a couple of times a week." (*Id.* at 35). It was a 45-minute drive from Pontiac Trail to M-5 to I-275 to Eureka. (*Id.*). On the morning of December 12, 2017, Stack was heading down to the warehouse because he "had some paperwork to take down there." (*Id.*). The paperwork consisted of bills of lading and purchase orders that he needed to give to someone in the warehouse so that the shipment of toilets that came in from China could be shipped out to the buyers. He had received this paperwork by email. His brother, Patrick Stack, testified that there was no need for Michael to go to the

warehouse to deliver the paperwork, because he could simply email the paperwork to the warehouse and they would prepare the shipment and put it on the dock. (Dep. of Patrick Stack, Dkt. 41-5, pg. 60-62).

Michael Stack was also a recovering alcoholic. He had been sober for 25 years prior to 2017, but he relapsed and in January of 2017 checked himself into an inpatient clinic for ten days. (Dep. of Michael Stack pg. 9-13). He also attended Alcoholics Anonymous meetings and took medication for high blood pressure and depression. (*Id.*).

On the morning of December 12, 2017, Michael Stack drank. (Dep. of Michael Stack pg. 37; Michigan Department of State Police Report, Dkt. 44-5, pg. 4). The quantity that he drank is disputed and ultimately not relevant to the Court's holding. While he was en route to the Taylor warehouse, Stack also took a business call to discuss sales. At around 10:25 a.m., while driving on I-275, Stack crossed the median and drove his GMC Envoy into incoming traffic at around 75 m.p.h. He continued driving against traffic until his SUV struck an oncoming car. (*See* Dkt. 60). Michael Stack survived. The two occupants of the car he struck did not.

## PROCEDURAL HISTORY

Allstate filed suit on September 25, 2018, seeking declaratory relief only. [Dkt. # 1]. On April 16, 2019, Plaintiff moved for Summary Judgment [41]. Defendant Thomas McIntyre moved for Summary Judgment [42] the next day, and,

on May 10, 2019, Defendant AMCO moved for Summary Judgment [44]. These motions are fully briefed, and a hearing was held on November 20, 2019. Sandy Holewinski did not file a Motion for Summary Judgment, but she did file a Reply brief [52] that Plaintiff moved to strike [56] as inconsistent with local rules.[1]

## LEGAL STANDARD

When Plaintiff seeks a declaratory judgment, the Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948). The statute is best read as "enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64, 72 (1985). The Sixth Circuit applies the following two-part inquiry in determining whether a declaratory judgment is appropriate.

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a

---
[1] The briefing at issue is not relevant to the Court's decision.

> useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990) (quoting E. BORCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941)).

Because these motions are for summary judgment, the standards of Rule 56 of the Federal Rules of Civil procedure also apply.

"The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc*., 571 F.3d 551, 554 (6th Cir. 2009). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

The Allstate Personal Umbrella Policy ("PUP") contains the following exclusion.

> We will not cover any occurrence arising out of a business or business property.

Def. Ex. B, pg. 3

"Business" is defined as:

a) Any full or part-time activity of any kind:
   1) Arising out of or relating to an occupation, trade, or profession of an insured person; and
   2) Engaged in by an insured person for economic gain, including the use of any part of any premises for such purposes.

*Id.* pg. 1.

An exclusionary provision in an insurance contract is strictly construed in favor of the insured. *McGuirk v. Meridian Mutual Ins. Co.*, 220 Mich. App. 347, 353 (Mich. Ct. App. 1996). Nevertheless, clear and specific exclusions must be given effect, for an insurance company should not be liable for a risk that it did not assume. *Id.* "[T]he rule of strict construction is tempered by the principle that '[c]ontracts ... are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.'" *Farm Bureau Mut. Ins. Co. of Michigan v. Stark*, 437 Mich. 175, 181, 468 N.W.2d 498, 501 (Mich. 1991), *overruled on other grounds by Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28 (Mich. 1999) (quoting *Kingsley v. American Central Life Ins. Co.,* 259 Mich. 53, 55, 242 N.W. 836 (Mich. 1932)).

Though Michael Stack was not paid for his driving, Plaintiff argues that his drive from his residence to the Penguin Toilets warehouse arose from a business activity within the meaning of the business activity exclusion of the PUP. The

Michigan Supreme Court has interpreted the language "arising out of" to require that one thing "springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it had arisen." *People v. Johnson*, 474 Mich. 96, 100-101 (Mich. 2006). Plaintiff argues that Michael Stack was delivering bills of lading to the warehouse, and that his driving was therefore related to his business.

This is not a case, however, where the insured party's driving was part of his business. The uncontested testimony of Patrick Stack makes clear that there was no need for Michael Stack to deliver the paperwork that was in his car. (Dep. of Patrick Stack, pg. 60-62). A courier whose job responsibilities entailed moving paperwork from place to place would certainly be engaged in a business venture while driving with paperwork. *See Amerisure Ins. Co. v. Graff Chevrolet, Inc.*, 275 Mich.App. 585 (Mich. Ct. App. 2003) (holding that a pizza delivery driver's accident was excluded by PUP business exclusion). Michael Stack was a corporate official however, not a courier, and the facts that he carried paperwork in his car and took a business phone call prior to the accident do not transform a commute into a business activity.

A contrary rule would transform all commutes to and from one's employment — and indeed any pre- or post-work driving that results from an insured party's job — into business activity under similarly-worded PUPs. Such a broad exclusion could not be divined by the "plain, ordinary and popular sense" of the language employed

in the policy. *See Kingsley v. American Central Life Ins. Co.*, 259 Mich. 53, 55 (Mich. 1932). A strict construction of the business activity exclusionary provision does not bring Michael Stack's accident into its ambit.

As a final matter, AMCO in its summary judgment motion made arguments about the limits of its own insurance coverage. These arguments are not properly before the Court. AMCO has not filed a counterclaim, and the question of whether or not to grant Plaintiff's declaratory judgment implicates only the terms of Plaintiff's personal umbrella policy.

## CONCLUSION

Plaintiff's position would risk excluding from coverage under its PUP all individuals driving to and from their workplace with paperwork in their cars. Such a position is inconsistent with the plain language of the policy, which excludes only activity arising from business or business property. The tragic accident at the heart of this suit was only incidentally related to Michael Stack's business.

Accordingly,

**IT IS ORDERED** that Allstate's Motion for Summary Judgment [41] is **DENIED**.

**IT IS FURTHER ORDERED** that McIntyre's Motion for Summary Judgment [42] is **GRANTED**.

**IT IS FURTHER ORDERED** that AMCO's Motion for Summary Judgment [44] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED**.

Dated: December 18, 2019

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge